UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONYA WARNER,

                    Plaintiff,                                    Hon. Gordon J. Quist

v.                                                                Case No. 1:11-CV-1068

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. Section

405(g) limits the Court to a review of the administrative record, and provides that if the

Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to

28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings

of fact and recommendations for disposition of social security appeals, the undersigned recommends

that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 33 years of age on her alleged disability onset date and 40 years of age on the date of the ALJ's decision. (Tr. 24, 139). Plaintiff successfully completed high school and worked previously as a housekeeper, sales attendant, and cashier. (Tr. 23).

Plaintiff applied for benefits on June 26, 2009, alleging that she had been disabled since April 30, 2004, due to post-concussion disorder, fibromyalgia, arthritis, asthma, allergies, and migraines. (Tr. 13, 139-42, 174). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 86-138). On January 6, 2011, Plaintiff appeared before ALJ Janice Shave, with testimony being offered by Plaintiff and vocational expert, Timothy Shaner. (Tr. 30-56). In a written decision dated May 31, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 13-24). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On July 2, 2008, Plaintiff participated in an EEG examination the results of which revealed "outside of mildly increased theta activity probably related to the medications she takes, this is a normal EEG done during wakefulness and sleep." (Tr. 391).

On September 6, 2008, Plaintiff was examined by Dr. Stephen Morgan. (Tr. 421). Plaintiff reported that she had recently experienced a "flare" of her migraine headaches. (Tr. 421). Plaintiff reported that her headaches are typically controlled with Midrin, but that she had recently run out of her medication. (Tr. 421). The results of a physical examination were unremarkable and Plaintiff's medication regimen was modified. (Tr. 421). On October 5, 2008, Plaintiff participated in a CT scan of her brain the results of which were "negative." (Tr. 420).

On January 5, 2009, Plaintiff reported to Dr. Holmes that her fibromyalgia was improved with medication and exercise. (Tr. 321). Plaintiff also reported that she was less anxious, less angry, and less easily frustrated. (Tr. 321).

On February 16, 2009, Plaintiff was examined by Dr. Jeremy Holmes. (Tr. 346-47). The results of a physical examination were unremarkable. (Tr. 347). The doctor further noted "no unusual anxiety or evidence of depression." (Tr. 347). The doctor concluded that Plaintiff suffered from "mild-moderate" fibromyalgia as well as depression which was "improving with Cymbalta." (Tr. 346).

On March 16, 2009, Dr. Holmes reported that Plaintiff's fibromyalgia "is improving" and that her "pain is relieved by exercise, pain/RX meds and OTC medicines." (Tr. 340-42). The doctor also reported that "Lyrica has helped her [headaches], [she is] also sleeping better and [her] pain level is down." (Tr. 340).

On May 7, 2009, Plaintiff was examined by Dr. Joseph Holoshitz. (Tr. 401-02). An examination of Plaintiff's extremities revealed "mildly reduced grip strength" bilaterally, but no evidence of synovitis or vasculitic or nodular changes. (Tr. 401). Plaintiff exhibited tenderness upon palpation of all 18 fibromyalgia trigger points, but a neurological examination was "unremarkable." (Tr. 401). The doctor also reported that "there is no evidence of connective tissue or inflammatory disease." (Tr. 402). Plaintiff reported that she had recently begun a water exercise program "that she feels is helping her." (Tr. 401).

On August 7, 2009, Plaintiff completed a report regarding her daily activities. (Tr. 187-94). Plaintiff reported that she prepares meals, vacuums, washes dishes, folds laundry, cleans the bathroom, runs errands, and shops for groceries and pet supplies. (Tr. 187-90). Plaintiff also reported that she watches television, reads, writes letters, knits, crochets, makes jewelry, plays games with her son, and cares for her cat. (Tr. 188-91). A similar report, completed by Plaintiff's husband the same day, contained similar responses. (Tr. 198-205).

Treatment notes dated September 3, 2009, indicate that Plaintiff "never exercises." (Tr. 543).

On November 6, 2009, Plaintiff participated in a CT examination of her cervical spine the results of which revealed "no evidence for acute abnormality of the cervical or upper visualized thoracic spine." (Tr. 536). The results of a CT scan of Plaintiff's brain, performed the same day, revealed "no evidence for acute intracranial abnormality." (Tr. 535).

On December 14, 2009, Plaintiff was examined by Dr. B. Scott Groseclose. (Tr. 439-42). Plaintiff reported that she was experiencing bilateral knee pain as well as "a problem with her left elbow." (Tr. 441). An examination of Plaintiff's left upper extremity was unremarkable with

no evidence of range of motion impairment or diminished strength. (Tr. 441). An examination of

Plaintiff's right knee revealed the following:

> Range of motion was from full extension to full flexion. There was
> some mild patellofemoral crepitation. There was no detectible
> effusion. Negative Lachman,[1] negative posterior drawer,[2] negative
> medial and lateral joint line tenderness. Patella seemed to track
> normally.

(Tr. 441).

> An examination of Plaintiff's left knee revealed the following:

> The range of motion of the left knee was from full extension to full
> flexion, again with some mild patellofemoral crepitation, but no
> significant detectible lateral subluxation. There is a negative
> Lachman, negative anterior drawer, and negative posterior drawer.
> Negative medial and lateral joint line tenderness.

(Tr. 441).

The doctor further observed that Plaintiff's gait "was within normal limits" and that

her "hips and ankles have non-tender stable passive motion." (Tr. 441). Plaintiff also exhibited

"good motor tone in both lower extremities without focal neurologic deficit." (Tr. 441). X-rays of

Plaintiff's knees revealed "no significant abnormalities." (Tr. 441). With respect to Plaintiff's knee

pain, the doctor concluded that Plaintiff was experiencing "mild osteoarthritis which is primarily

presenting as anterior knee pain." (Tr. 442). The doctor determined that he would treat Plaintiff's

knee pain with a series of three Synvisc injections. (Tr. 442). Plaintiff received the first such

---

[1] Lachman's test is used to determine whether a patient has suffered a tear of the anterior cruciate ligament. *See*, *e.g.,* Lachman's Test, available at http://www.fpnotebook.com/Ortho/Exam/LchmnTst.htm (last visited on February 20, 2013).

[2] Posterior and anterior drawer tests are designed to determine the presence of a PCL (posterior cruciate ligament) or ACL (anterior cruciate ligament) tear, respectively. *See* Posterior Drawer Test and Anterior Drawer Test, available at http://ahn.mnsu.edu/athletictraining/spata/kneemodule/specialtests.html (last visited on February 20, 2013).

injection on this date, the second injection one week later, and the third injection on January 11, 2010. (Tr. 431-42).

On February 4, 2010, Plaintiff reported that her anxiety was "okay" on her current medication. (Tr. 517). On February 10, 2010, Plaintiff participated in an electroencephalogram examination the results of which were "normal." (Tr. 412). On April 8, 2010, Plaintiff participated in a CT scan of her brain the results of which were "normal." (Tr. 508).

X-rays of Plaintiff's knees, taken on April 29, 2010, revealed: (1) "no acute fracture or malalignment," (2) "no knee joint effusion," and (3) "no significant degenerative change [and] no evidence of erosions." (Tr. 459).

On July 8, 2010, Plaintiff was examined by Dr. Holoshitz. (Tr. 451-52). Fibromyalgia testing revealed that Plaintiff "has many positive trigger points." (Tr. 451). Plaintiff reported that she "has tried water exercise," but was no longer doing so. (Tr. 451). Plaintiff also reported that "she is walking every once in awhile, but not in a consistent manner." (Tr. 451). Plaintiff exhibited "intact" range of motion of her knees "with no evidence of joint instability or synovial effusion." (Tr. 451). Neurological testing revealed "brisk tendon reflexes with no pathological reflexes" and "intact" muscle strength. (Tr. 451-52). The doctor concluded that the results of his examination were "highly consistent with fibromyalgia." (Tr. 452). The doctor emphasized to Plaintiff the importance of taking her prescribed medications and engaging in physical activity. (Tr. 452). With respect to Plaintiff's knees, the doctor instructed Plaintiff to participate in physical therapy. (Tr. 452).

On July 19, 2010, Plaintiff reported that she was taking her medications regularly and experiencing "fair control" of her fibromyalgia. (Tr. 491). On July 19, 2010, Dr. Groseclose

reported that x-rays of Plaintiff's knees "show some medial joint space narrowing, but certainly no marked osteoarthritis." (Tr. 430). On August 12, 2010, Plaintiff participated in an MRI examination of her right knee the results of which revealed "small knee effusion and mild degenerative change in the medial compartment." (Tr. 427).

On November 1, 2010, Plaintiff participated in a neuropsychological evaluation conducted by Kelly Ryan, Ph.D. (Tr. 445-50). Intelligence testing revealed that Plaintiff possesses "high average" verbal skills, "average" nonverbal perceptual skills, and a full scale IQ "in the average range." (Tr. 447). Plaintiff's "language functioning" was "intact." (Tr. 448). Plaintiff's performance on visual spacial functioning testing was "average." (Tr. 448). Plaintiff also completed "an objective mood and personality inventory" the results of which "exceeded the cutoff for a valid profile, suggesting that she responded inconsistently to a number of items with highly similar content." (Tr. 448). The doctor concluded that:

> Results of this evaluation indicate that the patient is of high average verbal intelligence and average non-verbal intelligence. She demonstrated intact language skills and visual spacial skills. Other test scores suggest some cognitive inefficiency that may be related to difficulties with executive functioning, attention and or processing speed. Memory functions were variable even across auditory and visual domains; memory for faces was high average, but memory for a complex figure was impaired. Learning and memory for short stories were average to low average, but list learning and memory was impaired. She demonstrated significantly impaired sustained attention and processing speed, with milder deficits on tasks of working memory and visual motor processing. Although direct comparisons cannot be made to her 2002 neuropsychological evaluation, her verbal and nonverbal intellect remains stable, but working memory and processing speed skills have significantly declined. While story memory appears to have declined from the superior range to the average/low average range, face memory has improved from the average range to high average range.

(Tr. 448-49).

At the administrative hearing, Plaintiff testified that she is unable to work because she suffers from "a lot of pain every day" which "causes a great deal of difficulty in walking and standing." (Tr. 35). Plaintiff reported that when her pain level "reaches a certain point" she blacks out and loses consciousness. (Tr. 35). Plaintiff reported that on a "good day" she vacuums, washes dishes, washes laundry, reads, watches television, prepares meals, and performs word puzzles. (Tr. 38-39). With respect to her migraine headaches, Plaintiff reported that she suffers them "every day, all day, 24 hours a day...they never go away." (Tr. 46).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

impairment as well as an exertional impairment, both are considered in determining her residual

functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders,

and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable

to perform her previous work, and cannot, considering her age, education, and work experience,

perform any other substantial gainful employment existing in significant numbers in the national

economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts

to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of

proof through step four of the procedure, the point at which her residual functioning capacity (RFC)

is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears

the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) obesity; (2) fibromyalgia; (3)

post-traumatic migraine headaches; (4) asthma; (5) history of occasional syncope; (6) depressive

disorder; (7) panic disorder without agoraphobia; and (8) mixed personality disorder, severe

impairments that whether considered alone or in combination with other impairments, failed to

satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20

C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 15-17).

With respect to Plaintiff's residual functional capacity, the ALJ determined that

Plaintiff retained the capacity to perform light work[4] subject to the following limitations: (1) she can

---

[4] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining

occasionally climb ramps/stairs, but can never climb ladders, ropes, or scaffolds; (2) she can occasionally stoop, kneel, crouch, and crawl, but can never balance; (3) she must avoid concentrated exposure to environmental irritants, including fumes/odors/dusts/gases and all exposure to poorly ventilated areas; (4) she must avoid concentrated exposure to chemicals and all use of moving machinery and dangerous machinery; (5) she must avoid all exposure to unprotected heights; (6) she can have only occasional interaction with the public and co-workers; (7) she may not work near a heat source such as grills, cooking, melting, or smoldering; (8) she cannot drive; (9) she cannot be exposed to cigarette smoke; and (10) she will likely experience a severe migraine once per month which will require that she be late for work or leave work. (Tr. 18).

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a

---

Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Timothy Shaner.

The vocational expert testified that there existed approximately 813,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 257-60). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to benefits.

a.     The ALJ's RFC determination is Supported by Substantial Evidence

Plaintiff first argues that the ALJ's RFC determination is deficient because the ALJ failed to "explain the evidentiary basis for the RFC determination" and, moreover, failed to "perform a function-by-function evaluation" of Plaintiff's work-related abilities as required by Social Security Ruling 96-8p.

As Plaintiff notes, this particular Ruling provides that in determining a claimant's RFC, the ALJ must "assess [the claimant's] work-related abilities on a function-by-function basis." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *1 (S.S.R., July 2, 1996). As the Sixth Circuit has recognized, however, while a "function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 547 (6th Cir., Mar. 4, 2002) (citation omitted). Rather, "the ALJ need only articulate how the evidence in the

record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Id.*

The ALJ discussed at length the evidence of record and how such supported her RFC determination, thus Plaintiff's argument that the ALJ failed to articulate the basis for her RFC finding is unpersuasive. Moreover, while the Court does not dispute that Plaintiff is impaired to a certain extent, the medical evidence nevertheless supports the ALJ's RFC determination. Plaintiff's fibromyalgia responded to medication and exercise. Plaintiff's emotional impairments likewise responded to treatment. The results of various objective medical tests were consistent with the conclusion that Plaintiff can perform a range of work activities. Plaintiff's reported activities are also consistent with the ALJ's RFC finding. As the ALJ's RFC determination is supported by substantial evidence, this particular argument is rejected.

b.      The ALJ Properly Assessed the Medical Evidence

On January 11, 2010, Dr. Groseclose reported that Plaintiff "is trying to get disability" and "I do not think that she will be able to do a stand-up type job because of her knees." (Tr. 433). Plaintiff argues that because Dr. Groseclose was her treating physician, the ALJ was required to afford controlling weight to his opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not

inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378 F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to her assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

The ALJ afforded "little weight" to Dr. Groseclose's opinion, finding that it "is not consistent with the medical evidence of record or the claimant's reported activities of daily living." (Tr. 22). As noted above, Plaintiff and her husband both reported that Plaintiff engages in a wide range of activities that require her to be on her feet for significant periods of time. Furthermore, examinations of Plaintiff's knees and lower extremities consistently revealed minimal findings, results at odds with Dr. Groseclose's opinion. Simply put, Dr. Groseclose's opinion is contradicted by substantial evidence of record. In her opinion, the ALJ stated that she "considered opinion evidence in accordance with the requirements of 20 CFR § 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 18). An examination of the ALJ's opinion reveals that she considered the six factors above. While the ALJ may not have addressed each factor individually, such are incorporated in her discussion. In sum, the ALJ articulated good reasons, supported by substantial evidence, for affording less than controlling weight to Dr. Groseclose's opinion.

c.      The ALJ Properly Discounted Plaintiff's Subjective Allegations

At the administrative hearing, Plaintiff testified that she is unable to work because she suffers from "a lot of pain every day" which "causes a great deal of difficulty in walking and standing." Plaintiff reported that when her pain level "reaches a certain point" she blacks out and loses consciousness. Plaintiff also reported that she suffers migraines "every day, all day, 24 hours a day...they never go away." The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 18-19). Plaintiff asserts that the ALJ improperly discounted her subjective allegations.

15

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to

resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ discussed in great detail, the objective medical evidence, as well as Plaintiff's reported activities, are utterly inconsistent with Plaintiff's allegations of disabling pain and limitation. (Tr. 18-22). As the ALJ observed, Plaintiff's fibromyalgia responded to treatment and exercise and was "stable." As for Plaintiff's migraines, the ALJ observed that Plaintiff reported that such were generally controlled with medication. Nevertheless, the ALJ accounted for some level of impairment for such in her RFC finding. The ALJ also noted that Plaintiff's emotional impairments also responded to conservative treatment. The ALJ further observed that Plaintiff's reported activities were inconsistent with her allegations of total disability. Moreover, as previously noted, Dr. Ryan concluded that Plaintiff, when participating in a neuropsychological evaluation, provided inconsistent responses which

"exceeded the cutoff for a valid profile." In sum, the ALJ's decision to accord limited weight to

Plaintiff's subjective allegations is supported by substantial evidence.


## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision

adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is

recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of

Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C).

Failure to file objections within such time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  March 4, 2013                          /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge